IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,                           3:11-cv-00640-MA

               Plaintiff,                           OPINION AND ORDER

     v.

11290 WILCO HIGHWAY, MOUNT
ANGEL, MARION COUNTY, STATE
AND DISTRICT OF OREGON, REAL
PROPERTY WITH BUILDINGS,
APPURTENANCES, AND
IMPROVEMENTS, *in rem*,

               Defendant.

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ROBERT D. NESLER
Assistant U.S. Attorney
1000 S.W. Third Ave., Suite 600
Portland, Oregon 97204-2902

     Attorney for Plaintiff

F. DE LA PUENTE
1610 12th Street S.E.
Salem, Oregon 97302

     Attorney for Claimant Noel Rodriguez

1 - OPINION AND ORDER

MARSH, Judge

The government brings this forfeiture proceeding pursuant to 18 U.S.C. § 985; 21 U.S.C. § 881; and 28 U.S.C. §§ 1345, 1355, 1356 & 1395.  Currently before the court is the government's motion to strike and for summary judgment (#32).  For the reasons set forth below, the motion for summary judgment is granted.

## BACKGROUND

On August 26, 1983, Nazario and Lucila Rodriguez purchased real property located at 11290 Wilco Highway, in Mount Angel, Oregon, for $20,500.  Declaration of Chris E. Nelson, Exh. 1.  On October 16, 1987, Nazario and Lucila Rodriguez conveyed a fee simple interest in the property to their son, Noel Rodriguez ("Claimant"), for the stated consideration of $500.00, reserving a life estate for Lucila Rodriguez.  Id., Exh. 2; N. Rodriguez Dec. at ¶ 2.

Sometime in the early 1990's, Nazario and Lucila Rodriguez built a house on the Wilco property, where they resided until 2011. N. Rodriguez Depo. at 40-44 & 93; Claimant's Response to Request for Admissions, No. 5.  Claimant has never resided at the home.[1]

_____

[1] For the past 39 years, Claimant has resided in a house located at 150 Cleveland Street, Mt. Angel, Oregon.  See N. Rodriguez Depo. at 17-20.  The Cleveland Street property was deeded to Claimant by his parents on the same day as the Wilco Highway property, for the stated consideration of $500, reserving a life estate in both properties for Lucila Rodrigeuz.  Id. at 20 & 31-33; N. Rodriguez Dec. at ¶ 7.  According to Claimant, it was his parents' intent that he would give one of the properties to

N. Rodriguez Depo. at 20. Claimant testified that his parents planned and paid for the construction of the home, although he was involved in choosing the style of of the house, as well as hiring and paying an electrician during the initial construction. N. Rodriguez Depo. at 39-41 & 68-70; N. Rodriguez Dec. at ¶ 6. In his declaration, Claimant states that he paid $13,000.00 toward the construction of the home. N. Rodriguez Dec. at ¶ 6. Claimant testified that he visited his parents at the Wilco property only once or twice per month, and on "at least two occasions" he gave them money to pay property taxes. N. Rodriguez Depo. at 101-02; N. Rodriguez Dec. at ¶¶ 10 & 16.

Steven James Brady, a handyman who did some work at the Wilco property in the late 1990s and early 2000s, declared that he purchased crack cocaine from Lucila and Nazario Rodriguez on more than 50 occasions. Brady Dec. at ¶ 16; see also Caldwell Dec. at ¶ 15. During this time, Brady "observed people coming and going from the property on a daily basis," and "frequently observed Nazario Rodriguez smoking crack cocaine in his shop." Id. at ¶¶ 14-15. Jodie Marie Caldwell declares that she knew Claimant, that she ingested cocaine with Claimant on multiple occasions in the 1990's,[2] and that she ingested crack cocaine at the Wilco property

---

his sister at some point in the future. N. Rodriguez Depo. at 31.

[2] Claimant admits that he ingested cocaine with Caldwell. N. Rodriguez Dec. at ¶ 11(3).

on multiple occasions with Steve Brady and Nazario Rodriguez. Caldwell Dec. at ¶¶ 3 & 17. Amy N. Will, a former drug addict, opines that it was well known among those with whom she consumed drugs, that Nazario and Lucilla Rodriguez were drug dealers in the Mount Angel area. Will Dec. at ¶ 8.

On March 4, 2000, the Marion County Sheriff's Office executed a search warrant at the Wilco property in connection with a drug investigation. Nelson Dec., Exh. 7 at 1; N. Rodriguez Depo. at 107-08. Claimant testified that he was aware of the search, and of the fact that officers seized a truck and $24,549.00 in cash. N. Rodriguez Depo. at 108; Nelson Dec., Exh. 7 at 4-5. When questioned about any discussions he had with his parents after the 2000 search and seizure, Claimant testified as follows:

> Q    You remember in 1999 or 2000 there was another
>      search warrant at the house, wasn't there?
>
> A    Yes.
>
>                  * * * * *
>
> Q    What do you remember about the details of that
>      search warrant?  How did you find out about
>      it?
>
> A    My sister called me.
>
> Q    And what did she tell you?
>
> A    Well, that there was officers at the house.
>
> Q    And that's all she said?
>
> A    Well, she didn't know the whole -- at that point,
>      yeah, that's what she had told me.

Q      Did she tell you that the officers seized drugs?

                            * * * * *

A      She didn't tell me anything about that raid until I
found out afterwards.  And, I can't remember, I
think they brought me the discovery.  Is that what
they call it?

Q      The criminal discovery - -

A      Um-hmm.

Q      - - or the search warrant returns?  I'm not
sure what you're talking about.  What did you
see?

A      I think it's just called a discovery of what - -

Q      Of what had been seized and what was found?

A      Yes.

Q      Okay.  And that was with respect to the 1999 or
2000 warrant?

A      Correct.

Q      And what did you see in that discovery?

A      I didn't see any drugs being taken, like you just
mentioned.  I did see that they seized money.  I
saw that.  And I saw that they had seized the
truck.  But there was - - I don't remember seeing
any drugs being found.

Q      Did you discuss that warrant with either or [both]
your parents?

A      I had discussed it with my mother to see what was,
you know, what took place.

Q      And when did you have that discussion?

A      I don't know.  A few days afterwards.  A few days
afterwards.

Q    Okay.  And what did she tell you?

A    Well, she assured me that there was nothing going on, and I just took that as an okay.

Q    Did you ask her whether they were selling drugs out of the house?

A    Yeah.  You know, I asked them, well, what was the raid for.  She was real vague in her answers, but she had assured me that there was no drugs, and I went [sic] to believe her because there was none found.

Q    Did you ask her whether she had been selling drugs out of the house?

A    No.  I didn't ask her.

Q    Did you ask her whether your father had been selling drugs out of the house?

A    No.

Q    Did you ask either of your parents whether they were selling drugs, whether out of the house or not?

A    No.

                    *  *  *  *  *

Q    After they agreed to plead guilty did you have any discussions with your parents about how the house was used to sell drugs?

A    Not really, no.

Q    You didn't want to know?

A    Yeah.  I didn't.

Q    **You never have wanted to know, have you?**

A    **No.**

Q     **Because you didn't want to know after the 1999 search either. You didn't ask questions.**

A     **No, I just didn't want to - - I just didn't want to know. It was already done.**

N. Rodriguez Depo. at 107-10 & 150-51 (emphasis added).

In January and March, 2008, Nazario and Lucila Rodriguez were indicted for their participation in two separate drug trafficking conspiracies involving crack cocaine and methamphetamine. United States v. Diaz-Ayala, et al., 6:08-cr-00128-HO & United States v. Sanchez, et al., 3:08-cr-00035-JO. Nazario and Lucila Rodriguez entered into plea agreements wherein they agreed to plead guilty to charges that they distributed Crack Cocaine in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii), and that the Wilco property was used to commit and facilitate their illegal drug activity. Nelson Aff., Exhs. 3 at ¶ 17 & 4 at ¶ 18; United States v. Sanchez, et al., 3:08-cr-00035-JO, Plea Petitions (#190 & #203). As part of her plea agreement, Lucila Rodriguez waived her life estate interest in the real property and premises. Id., Exh. 3 at ¶ 17.

On June 6, 2011, Lucila Rodriguez was sentenced to 33 months incarceration, to be followed by three years supervised release. United States v. Rodriguez, 3:08-cr-00035-HO-4, Judgment and Commitment (#233). Nazario Rodriguez died (prior to sentencing) on June 10, 2011. United States v. Rodriguez, 6:08-cr-00128-HO-4, Motion to Abate Conviction (#157).

On May 26, 2011, the government filed the instant proceeding, seeking civil forfeiture of the property and premises located at 11290 Wilco Highway.  On July 11, 2011, Noel Rodriguez filed a claim stating that he is the "fee owner of record of said real property, having been deeded title thereto in October, 1987." Claimant subsequently filed an amended answer wherein he challenges the forfeiture on the basis that he is an "innocent owner" and that forfeiture would be an excessive penalty in violation of the Eighth Amendment.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving the absence of a genuine dispute of material fact.  U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, 692 F.3d 1009, 1014 (9th Cir. 2012).  This court reviews the evidence in the light most favorable to the non-moving party, and must draw all reasonable inferences in favor of that party.  Maxwell v. County of San Diego, 2012 WL 4017462 *2 (9th Cir. Sept. 13, 2012).

## DISCUSSION

**I.    Standing of Person Holding Partial Interest in Property to Challenge Forfeiture.**

Article III standing is a threshold question in every federal case.   United States v. Real Property Located at 5208 Los

8 - OPINION AND ORDER

Franciscos Way, Los Angeles, Cal., 385 F.3d 1187, 1191 (9th Cir. 2004). "In order to meet the case-or-controversy requirement of Article III, a plaintiff (including a civil forfeiture claimant) must establish the three elements of standing, namely, that the plaintiff suffered an injury in fact, that there is a causal connection between the injury and the conduct complained of, and that it is likely the injury will be redressed by a favorable decision." United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 637 (9th Cir. 2012).

Claimants in a civil forfeiture proceeding can satisfy this test by showing that they have a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake. Id.; Real Property Located at 5208 Los Franciscos Way, 385 F.3d at 1191. Whether a claimant has an ownership interest in property is determined under the law of the state in which the interest arose. Real Property Located at 5208 Los Franciscos Way, 385 F.3d at 1191. To withstand a motion for summary judgment for lack of standing, a claimant must set forth by affidavit or other evidence specific facts supporting a finding that he possesses an ownership or possessory interest in the property. $133,420.00 in U.S. Currency, 672 F.3d at 638.

In the instant proceeding, it is undisputed that Lucila and Nazario Rodriguez executed a deed in 1987, transferring the Wilco property to Claimant, reserving a life interest for Lucila. There

is no evidence that Claimant has transferred his future interest in the property, or that a constructive trust in favor of Claimant's parents arose (under Oregon law) as a result of this transfer for nominal or no consideration.  See Connall v. Felton, 225 Or.App. 266, 270-74, 201 P.3d 219 (2009) (declining to impose constructive trust for the benefit of the estate on property transferred by decedent to stepson for no consideration).

A person holding a future interest in property subject to forfeiture has a facially colorable interest in the proceedings sufficient to confer standing.  The holder of a future interest in forfeitable property is seeking to protect his own (*albeit* future) interest in the property, not that of the life tenant.  See 18 U.S.C. § 983(d)(2)(B)(5) (setting forth possible remedies when innocent owner holds partial interest in property otherwise forfeitable); cf. United States v. Grossi, 2012 WL 1963401 *3 (9th Cir. June 1, 2012) (noting that criminal forfeiture statute contemplates partial forfeitures when criminal defendant owns real property with innocent others).  Accordingly, I conclude that claimant Noel Rodriguez has standing to contest the forfeiture of the real property located at 11290 Wilco Highway, Mount Angel, Oregon.  The government's motion to strike for lack of standing, therefore, is denied.

///

///

10 - OPINION AND ORDER

**II.  <u>Government's Burden to Prove Forfeitability of Property</u>**.

A civil forfeiture operates *in rem* against the property on the theory that the property itself is guilty of wrongdoing.  <u>United States v. Nava</u>, 404 F.3d 1119, 1123 (9th Cir. 2005)(citing 21 U.S.C. § 881).  In the instant proceeding, the government seeks forfeiture under 21 U.S.C. § 881(a)(7), which provides for the forfeiture of real property used, or intended to be used, to commit or facilitate the commission of illegal drug activity.

The government bears the initial burden to establish that the property is subject to forfeiture by a preponderance of the evidence, and that there was a substantial connection between the property and the criminal offense.  18 U.S.C. § 983(c)(1) & (3); <u>Real Property Located at 5208 Los Franciscos Way</u>, 385 F.3d at 1193.

Despite Claimant's protestations, I conclude that there is no genuine dispute of fact as to whether the government has satisfied its burden to establish, by a preponderance of the evidence, that the Wilco property is forfeitable on the basis that it was used to commit or facilitate the commission of illegal drug activity, and that there is a substantial connection between the property and the criminal offense.

As outlined above, both Nazario and Lucila Rodriguez signed plea agreements admitting to illegal drug activity, and to the fact that the property was used to commit and facilitate their illegal drug activity. Nelson Dec., Exhs 3 & 4.  Contrary to claimant's

hearsay objection, the plea agreements are admissible under the residual exception to the hearsay rule (Fed. R. Evid. 807), and Nazario Rodriguez's plea agreement also is admissible under Fed. R. Evid. 804(b)(3)(A).  See In re Slatkin, 525 F.3d 805, 811-13 (9th Cir. 2008).

Additionally, I conclude that the following statements in Officer Moquin's Affidavit are admissible because they are based upon his personal knowledge, and the statements contained therein attributed to Nazario Rodriguez are admissible "statements against interest" made by a declarant who has since passed away:

24.  On January 12, 2011, I conducted a proffer with Nasario Rodriguez and his attorney.  Nasario admitted to being in the drug business for years. Nasario said he had been selling "all my life" and sold out of his house in the Mt. Angel, Oregon area. * * *

25.  Nasario admitted to having a past addiction to cocaine and said he moved quite a bit of cocaine a day and said "probably 10 pounds."  He said he would sell the cocaine in quantities of ½ and ¼ pounds.  Nasario said he had approximately 50 customers come by the residence each day.  Nasario said he kept about ½ pound always at the residence in Mt. Angel.  Nasario said he sold the cocaine to keep up with his habit and use of the cocaine.

See Complaint In Rem, Affidavit of Todd W. Moquin at 9-10; Declaration of Chris Nelson, Exh. 5 (Report of Investigation by Todd W. Moquin); Fed. R. Evid. 804(b)(3)(A).[3]

-------

[3] The government offered additional evidence of Nazario and Lucile Rodriguez illegal drug activity at the Wilco property through the declarations of Officers Moquin and Chris Nelson.  In

12 - OPINION AND ORDER

Based upon the foregoing undisputed evidence, I conclude that summary judgment on the issue of forfeitability is warranted. Claimant offers no evidence to create a genuine dispute of fact as to whether the government has satisfied its burden of proving, by a preponderance of the evidence, that the Wilco property is forfeitable, and that there was a substantial connection between the property and the illegal drug activity of Nazario and Lucila Rodriguez.

## III. **Forfeitability of Lucila Rodriguez's Life Estate**.

The government moves for summary judgment on the forfeitability of Lucila Rodriguez's life estate. It is undisputed that Lucila possessed a life estate in the property, that she waived all interest in the property as part of her plea agreement, that she did not file a claim to the property in this civil forfeiture proceeding. A default judgment as to all people except Claimant Noel Rodriguez has been entered in this action. See Order (#15).

Accordingly, Lucila Rodriguez is in default as to her life estate in the Wilco property. Claimant offers no evidence to support a finding that as a remainderman, he has a colorable interest in Lucila's life estate during her life time. See *infra*

---

light of the substantial and undisputed evidence of forfeitability, I have not relied upon the additional information due to concerns that it may not *all* be premised upon the personal knowledge of the declarants. See Fed. R. Civ. P. 56(c)(4).

at 14.   Accordingly, summary judgment in favor of the government, as to Lucila Rodriguez's life estate interest, is granted.

IV.   **Forfeitability of Claimant's Remainder Interest**.

The government also moves for summary judgment on the issue of whether Claimant's remainder interest in the Wilco property is subject to forfeiture.   Claimant opposes forfeiture on the basis that he is an "innocent owner" under § 983(d)(1).

Pursuant to 18 U.S.C. § 983(d)(1), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."  The claimant bears the burden of proving that he or she is an innocent owner by a preponderance of the evidence. 18 U.S.C. § 983(d)(1); United States v. Ferro, 681 F.3d 1105, 1109 (9th Cir. 2012).   In the instant proceeding, the government contends that Claimant is neither an "owner," nor "innocent" under the undisputed facts of this case.

A.   **Owner**.

To be an "owner" of real property for purposes of civil forfeiture, a claimant must show that he (1) has a legal interest in the property in accordance with state property law; *and* (2) is *not* a mere "nominee who exercises no dominion or control over the property."  18 U.S.C. § 983(d)(6)(A) & (B)(iii); United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1015 (8th Cir. 2003); United States v. One 1990 Beechcraft 1900 C Twin Engine Turbo-Prop Aircraft, 659 F.Supp.2d 1260, 1267 (S.D.Fla. 2009); United States

v. Real Property Known as 1866 Center Rd., Wilmington, 2008 WL 906061 *3 (S.D.Ohio Mar. 31, 2008).

It is undisputed that Oregon law recognizes a vested remainder interest in real property, subject to a life estate. Webb v. Underhill, 130 Or.App. 352, 358 n. 6, 882 P.2d 127 (1994); Matter of Marriage of Rinehart, 26 Or.App. 513, 515, 552 P.2d 1346 (1976). A remainderman acquires the possessory interest in the property upon the death of the life tenant. Webb, 130 Or.App. at 358 n.6. Although the government notes that Claimant's parents deeded the remainder interest to Claimant for nominal or no consideration, the government offers no argument that this rendered the transaction ineffectual under Oregon law. See Connall, 225 Or.App. at 270-74 (declining to impose constructive trust for the benefit of the estate on property transferred by decedent to stepson for no consideration).

In determining whether a vested remainderman such as Claimant nevertheless is a mere "nominee" under § 983(d)(6)(B)(iii), the degree, quality, and genuineness of the dominion or control exercised by a claimant must be examined. United States v. $13,000.00 in U.S. Currency, et al., 858 F.Supp.2d 1194, 1205 (D.Colo. 2012); One 1990 Beechcraft 1900 C Twin Engine Turbo-Prop Aircraft, 659 F.Supp.2d at 1268. "'If the degree of dominion or control is small, or if it is merely a cover for the control exercised by the true owner, it is tantamount to no dominion or

15 – OPINION AND ORDER

control at all and divests the claimant of the status of owner.'" $13,000.00 in U.S. Currency, 858 F.Supp.2d at 1205 (quoting One 1990 Beechcraft Aircraft, 659 F.Supp.2d at 1268).

In the instant proceeding, the government contends that there is no genuine dispute that claimant is a mere nominee who exercised no dominion and control over the property.  In response, Claimant offers a strained interpretation of § 983(d)(6)(A)(iii) which does not give full effect to the language of the statute.  In my view, when examining the degree, quality, and genuineness of a claimant's dominion or control over property under § 983(d)(6)(A)(iii), a court necessarily must take into account the nature of the claimant's property interest.

Here, it is undisputed that Claimant possessed only a future interest in the property which is non-possessory under Oregon law. Moreover, the government points to no evidence that the transfer of this future remainder interest in 1987 (prior to the time a residence was built on the property), was a sham transaction intended to transfer legal title to Claimant as a nominee for his parents, as opposed to a legitimate estate planning vehicle.  Under these circumstances, and because Claimant has offered evidence that he exercised *some* dominion or control over the property, I conclude that there is a genuine dispute of fact as to whether Claimant was an "owner" or a mere nominee who exercised no dominion and control over the property under § 983(d)(6)(A)(iii).  See United States v.

16 - OPINION AND ORDER

One 1990 Beechcraft C Twin Engine Turbo-Prop Aircraft, 619 F.3d 1275, 1278 (11th Cir. 2010) (concluding that *some* dominion or control satisfies statute). Accordingly, I proceed to the question of whether, assuming that Claimant is an "owner" of the Wilco Property, there is a genuine dispute as to whether Claimant is an "innocent owner".

**B.   Innocent Owner**.

Where, as here, the Claimant owned the property in question prior to the time the illegal conduct took place, the claimant is an "innocent owner" only if he (1) did not know of the conduct giving rise to the forfeiture; or (2) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property. 18 U.S.C. § 983(d)(2)(A); Ferro, 681 F.3d at 1112-13.

Actual knowledge of the conduct giving rise to a forfeiture may be proven by circumstantial evidence. United States v. One 2005 Dodge Magnum, 845 F.Supp.2d 1361, 1371 (N.D.Ga. 2012); United States v. One 1988 Checolet 410 Turbo Prop Aircraft, 282 F.Supp.2d 1379, 1383 (S.D.Fla. 2003). Hence, a property owner cannot turn a blind eye toward evidence of drug activity, and still claim innocent owner status. One 2005 Dodge Magnum, 845 F.Supp.2d at 1371; United States v. Real Property in Santa Paula, Cal., 763 F.Supp.2d 1175, 1190-92 & n.6 (C.D.Cal. 2011); One 1988 Checolet

<u>410 Turbo Prop Aircraft</u>, 282 F.Supp.2d at 1383; <u>United States v.</u>
<u>One 1992 Lexus SC400</u>, 167 F.Supp.2d 977, 986-88 (N.D.Ill. 2001).

Relying solely upon his declaration, Claimant argues that he
did not know of his parents' illegal drug activity.  However, the
undisputed evidence belies Claimant's assertion, and supports a
finding that there is no genuine issue as to whether Claimant was
wilfully blind to his parents' drug activity.

It is undisputed that Nazario Rodriguez was a long-time drug
user, and had been selling drugs for years to support his habit.
Nazario Rodriguez estimated that he was conducting approximately 50
sales per day at the property.  Steven Brady, a handyman working on
the property in the late 1990s and early 2000s, observed "people
coming and going from the property on a daily basis."  Further, it
is undisputed that Lucila Rodriguez was caring for Claimant's
children at the Wilco Property, and either Claimant, or more often
his wife, picked the children up at the end of the day.

Claimant states that he became estranged from his parents in
2005.  Prior to that estrangement, in March, 2000, police seized
$24,549.00 in cash from the Wilco property.  According to Claimant,
his mother assured him after this incident that there was no
illegal drug activity occurring.  Despite the unexplained presence
of this large amount of cash, Claimant testified that he didn't
question his mother about illegal drug activity because "he just

didn't want to know."[4]   After his parents entered their guilty pleas to drug trafficking, Claimant again did not have any discussions with his parents about how the Wilco property was used to facilitate this illegal activity because he didn't want to know.

Given this significant objective evidence and Claimant's own testimony that he was willfully blind to his parents' illegal activity, Claimant's bare denial of knowledge in a subsequent declaration is insufficient as a matter of law to create a genuine issue of fact for trial.  See United States v. 16328 South 43rd East Ave., Bixby, Tulsa Cty., 275 F.3d 1281, 1285 (10th Cir. 2002); United States v. Real Property Located at 414 Riverside Road, Oakview, CA, 15 F.3d 1094 *3 (9th Cir. Jan. 10, 1994)(unpublished); United States v. One Parcel of Property, Located at 755 Forest Road, 985 F.2d 70, 73 (2nd Cir. 1993); Real Property in Santa Paula, Cal., 763 F.Supp.2d at 1189-90.

Claimant has made no showing that he took all reasonable steps to terminate the illegal use of the Wilco property.  See 18 U.S.C. § 983(d)(2)(A)(ii); 16328 South 43rd East Ave., 275 F.3d at 1286; Real Property in Santa Paula, Cal., 763 F.Supp.2d at 1185.

---

[4]  In a subsequent declaration, Claimant states that his comments about not wanting to know about his parents' illegal drug activity referred only to the period of time after the raid of March 2008, not the 2000 search.  N. Rodriguez Dec. at ¶ 20. However, Claimant cannot create a sham issue of fact, in order to avoid summary judgment, by submitting a declaration that contradicts his deposition testimony.  Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991).

Accordingly, summary judgment in the government's favor is appropriate as to Claimant's entire interest in the Wilco property.[5]

## V.    **Excessive Fine**.

Pursuant to 18 U.S.C. § 983(g), a "claimant under subsection (a)(4) may petition the court to determine whether the forfeiture was constitutionally excessive."   In his memorandum opposing summary judgment, Claimant states that "in the event of an order of forfeiture, Claimant will petition the court for remission." Claimant's Memo. at 4.  It is ordered that Claimant shall file his petition within 30 days of the date of this order.

**CONCLUSION**

Based on the foregoing, the government's motion to strike (#32-1) is DENIED, and motion for summary judgment (#32-2) is GRANTED.

///

///

///

---

[5] In so holding, I have not considered the declarations of Steven Brady, Jodie Caldwell, Amy Will concerning Claimant's alleged drug activity and knowledge of drug activity at the Wilco property, because Claimant has submitted a declaration denying their assertions.  However, even in the absence of this additional evidence, there is no genuine dispute of fact that Claimant was willfully blind to his parents' illegal drug activity at the Wilco property.

20 - OPINION AND ORDER

IT IS FURTHER ORDERED that Claimant shall submit his petition for remission within 30 days of the date of this order.

IT IS SO ORDERED.

DATED this *29* day of October, 2012.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge